IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **S.R. by and through his next friend, Phillip Rosenbauer,** *et al.* *Plaintiffs* | : : : : | **MISCELLANEOUS ACTION** |
| | : | NO. 20-mc-00002 |
| **v.** | : : | |
| **PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES,** *et al.* *Defendants* | : : : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                              MAY 19, 2020

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is the City of Philadelphia's ("City") motion to quash the third subpoena issued by Plaintiffs in the class action *S.R. v. Pennsylvania Department of Human Services*, No. 17-cv-2332 (M.D. Pa. filed Dec. 18, 2017), in which the City is not a party. [ECF 1]. The City filed the instant motion pursuant to Federal Rule of Civil Procedure ("Rule") 45(d)(3)(A) and seeks to quash or modify the subpoena to the extent that it requires disclosure of confidential documents pertaining to twelve unnamed, absent class members. Plaintiffs oppose the motion. [ECF 6]. The issues are fully briefed and the motion is ripe for disposition. For the reasons set forth herein, the motion is granted, *in part*, and the subpoena is modified, as set forth in the accompanying Order.

**BACKGROUND**

The underlying case is a certified class action lawsuit before the Honorable John E. Jones, III ("Judge Jones"), which was filed on behalf of "all Pennsylvania children and youth under age 21 who, now or in the future, are adjudicated dependent and have diagnosed mental health disabilities" and against the Pennsylvania Department of Human Services and its Acting Secretary

Teresa Miller (collectively, "Defendant DHS").  City Br. Ex. B at 82 (ECF 1).[1]  The class action was filed by six named plaintiffs who were subsequently approved as the class representatives for thousands of children throughout Pennsylvania.  In the complaint, Plaintiffs allege that Defendant DHS discriminatorily denied the class necessary mental health and child welfare services, in violation of several federal statutes.

During discovery, Plaintiffs served multiple subpoenas on the City seeking information about class members who are in the care and custody of the Philadelphia Department of Human Services ("Philadelphia DHS").  In the underlying motion, the City challenges the third subpoena, which was issued by Plaintiffs on October 15, 2019.  *See* City Br. at 86-96.  This subpoena seeks various documents pertaining to twelve "specifically-identified" children adjudicated dependent in Philadelphia and who are not named plaintiffs in the underlying action, but have been identified by Plaintiffs as class members.  The subpoena requested documents concerning, *inter alia*: court records, abuse investigations, placements, medical and behavioral health, education, DHS services, and behavioral incident reports.[2]  Notably, the twelve absent class members have not

---

[1] For ease of reference, all citations to the motion to quash refer to the pagination of ECF 1, without differentiating between the main text of the City's motion and its exhibits.  Within ECF 1, Exhibit A begins on page eighteen (18), Exhibit B begins on page sixty-two (62), Exhibit C begins on page eighty-six (86), and Exhibit D begins on page ninety-nine (99).

[2] Specifically, the subpoena requested: "1. All documents and communications concerning [the twelve named class members]. The documents and communications to be produced include, but are not limited to, those concerning: i. court records, including but not limited to, dependency and delinquency docket sheets, court petitions and other filings, and judicial recommendations and orders; ii. allegations, investigations, and determinations relating to abuse, neglect, or other reasons for referrals to Philadelphia DHS; iii. all placements (e.g., foster care, kinship care, group homes, Residential Treatment Facilities, shelters, youth detention or development centers), including referrals to and/or rejections from placements, admission summaries, treatment plans developed during placements, and discharge summaries or plans; iv. all services and supports recommended and/or provided to the youth and/or his/her biological, kinship, or foster families (including, but not limited to, in-home services and community-based services) and any denials or terminations of services; v. all psychiatric, psychological, neuropsychological, education, or other evaluations; vi. all screens for mental or behavioral health issues, such as CANS, FAST, or ASQ; vii. all team, interagency, or permanency planning conferences or meetings; viii. all case plans, visit reports, supervisory logs, progress reports, notes, or similar documents created by Philadelphia DHS, CUAs, or

been provided notice of the subpoena. City Br. at 11. The City filed the underlying motion seeking this Court either to quash the subpoena or grant such relief as it deems appropriate, essentially arguing that compliance with the subpoena would require it to violate several state confidentiality laws.

**DISCUSSION**

Rule 45 "establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit." *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. Jan. 17, 2013). Any subpoena issued pursuant to Rule 45 must also fall within the proper scope of discovery as defined under Rule 26. *Id*. Specifically, Rule 45(d)(3)(A) directs a court (in the district where compliance with the subpoena is required) to quash or modify a subpoena that, *inter alia*, "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii-iv). When applying Rule 45, courts must "balance several competing factors: (1) relevance, (2) need, (3) confidentiality, and (4) harm." *Mannington Mills Inc. v. Armstrong World Indus., Inc*., 206 F.R.D. 525, 529 (D. Del. 2002).

"As with all discovery, the subpoenaing party bears the initial burden of demonstrating the requested discovery is relevant, as defined by Rule 26." *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. Oct. 8, 2014) (internal quotations and citations omitted).[3]

---

providers; ix. review of recommendations and/or decisions concerning placement in congregate care settings and consideration of less restrictive alternatives; x. incident reports or similar reports relating to the plaintiffs' behavioral issues; xi. all communications with PA DHS (including, but not limited to, referrals to the Complex Case Planning process), CBH, and/or providers; and xii. the costs for all services, residential and non-residential, provided to the youth." City Br. at 91-94.

[3] Under Rule 26, a party may seek discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

Under Rule 26, a party may seek discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). If the subpoenaing party meets its threshold burden of showing that the information sought is relevant to the underlying action, then the movant seeking to quash or modify the subpoena bears the burden of establishing that Rule 45 applies to the information sought and that the subpoena must be quashed or modified. *ITOCHU Int'l, Inc.*, 303 F.R.D. at 232 (E.D. Pa. Oct. 8, 2014) (citing *Sealord*, 918 F. Supp. 2d at 383); see also *Symphony FS Ltd. v. Thompson*, 2018 WL 5023638, at *1 (E.D. Pa. Oct. 16, 2018). In deciding discovery disputes, courts have significant discretion. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987); *Sealord*, 918 F. Supp. 2d at 382.

### *I. Relevancy*

Here, Plaintiffs bear the initial burden of showing that the information they seek is relevant to the claims or defenses in the underlying litigation. In their response to the motion, Plaintiffs argue that the documentation regarding the twelve identified absent class members is relevant because Plaintiffs intend to have experts review the sought documents to "assess the services [the twelve children] received and did not receive in light of the Plaintiffs' claims in this matter." Plf. Br. at 11 (ECF 6). The City argues that the information is not relevant, for several reasons: (1) the records of the twelve children are not relevant because they are *mere absent class members*, rather than named plaintiffs; (2) Plaintiffs' proffered explanation of relevancy is hardly articulable or apparent; and (3) the scope of documentation sought is too broad.

United States District Court Magistrate Judge Martin E. Carlson ("Magistrate Judge Carlson"),[4] in addressing a similar motion to quash a similar subpoena issued by Plaintiffs to

---

[4] Judge Jones referred a similar motion to quash to Magistrate Judge Carlson for resolution. This Court has thoroughly reviewed and considered Magistrate Judge Carlson's opinion prior to resolving the instant motion.

another Pennsylvania county, found that the same types of documentation pertaining to another absent class member were "potential[ly] relevan[t]" to Plaintiffs' claims in general.[5]  In deciding the instant motion, this Court is persuaded by the City's arguments regarding the relevancy of the subpoenaed documentation.  Notably, the class in the underlying action has already been certified, so discovery as it pertains to class certification is closed and any discovery pertaining to class certification is no longer relevant.  *See Aldapa v. Fowler Packing Co.*, 2016 U.S. Dist. LEXIS 78791, at *20 (E.D. Cal. Jun 16, 2016) ("at the pre-class certification stage, discovery in a putative class action is generally limited to certification issues. . . . class members and parties are not treated identically.") (quoting *Dysthe v. Basic Research, L.L.C.*, 273 F.R.D. 625, 628 (C.D. Cal. 2011)).  In the decision certifying the class, Judge Jones noted that the "evidence needed to prove the systemic failures and discriminatory impact of the Defendants' practices will be substantially the same for all putative class members" and, thus, certified the class and approved the six named plaintiffs as the class representatives.  *S.R. v. Pennsylvania Dep't of Human Servs.*, 325 F.R.D. 103, 112 (M.D. Pa. April 3, 2018).  After the class was certified, Plaintiffs' burden at trial becomes one of proving Defendant DHS's violation of the federal statutes in the specific factual circumstances *of the six named plaintiffs*.  Consequently, any information pertaining to the medical, psychological, and/or court records of the twelve children—who are merely unnamed, absent class members—would not tend to make any of the six named plaintiffs' claims more or less likely to be true.  Detailed facts about an absent class member's experience as a dependent in a DHS system have no legal bearing on the facts about any of the six named plaintiffs'

---

[5]   *S.R. v. Pennsylvania Dep't of Human Servs.*, No. 17-cv-2332, 2020 U.S. Dist. LEXIS 29776, at *9 (M.D. Pa. Feb. 20, 2020).

experiences.[6]  Plaintiffs have chosen to present their case through the factual stories of the six named Plaintiffs who were approved as the class representatives.  As such, any intimate details of another class member's history are irrelevant to proving Plaintiffs' claims against Defendant DHS.[7]  While statistical details of similar children and cases may have been relevant to class certification,[8] and may perhaps be conditionally relevant *after a finding of liability* in a subsequent proceeding on damages (if Plaintiffs are ultimately victorious and are determining appropriate relief for the class members),[9] detailed factual information about any of the twelve absent class

---

[6]  *See In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 347 (E.D. Pa. 1976) ("A defendant does not have unlimited rights to discovery against unnamed class members; *the suit remains a representative one*.") (quoting *Blackie v. Barrack*, 524 F.2d 891, 907 n.22 (9th Cir. 1975)) (emphasis added); *see also Aldapa v. Fowler Packing Co*., 2016 U.S. Dist. LEXIS 78791, at *20 (E.D. Cal. June 16, 2016) ("Discovery focused on putative or absent class members is normally allowed only in special circumstances[.]") (citing *Dysthe*, 273 F.R.D. at 628; *Withers v. eHarmony, Inc*., 267 F.R.D. 316, 320 (C.D. Cal. 2010)); *Withers*, 267 F.R.D. at 320, 321 n.4 (holding that although discovery from unnamed class members is generally only allowed in special circumstances, some district courts have allowed discovery regarding absent class members *where those class members participated in class certification procedures*) (collecting cases).  Notably, none of the "special circumstances" enumerated in *Aldapa* and *Withers* apply in this case.

[7]  *See Brennan v. Midwestern United Life Ins. Co*., 450 F.2d 999, 1004 (7th Cir. 1971) (acknowledging merit in movants' explanation that "[Rule 23] contemplates an adversary contest involving only the representative member of a class, with all other members of the class being permitted passively to await the outcome of the principal suit, and [] it is inconsistent with the purpose of Rule 23 to require any affirmative action from absent class members before the conclusion of the representative suit" and expanding merely to clarify that there are some exceptions under which absent class members may be required to submit to discovery.).  *See also Aldapa*, 2016 U.S. Dist. LEXIS 78791, at *20 (citing *Antoninetti v. Chipotle, Inc*., 2011 U.S. Dist. LEXIS 54854 (S.D. Cal. May 23, 2011) as "noting that although discovery from absent class members is not usually allowed, the rules are flexible especially where the [absent class members] have been identified as potential witnesses or have otherwise injected themselves into the litigation, such as after they have submitted declarations in support of class certification.") (internal quotations omitted).

[8]  *See Aldapa supra* p. 4

[9]  *See In re Sugar*, 73 F.R.D. at 347 ("[Evidence supporting] a presumption of impact [from a defendant's actions on an entire class] is applicable *at a subsequent trial on damages* . . . . The right of rebuttal [against such a presumption], however, does not preclude the predominance of common questions.  The fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all. . . . Defendants' liability to

members is not relevant to Plaintiffs' claims. Furthermore, Plaintiffs' proffered explanation of relevancy—that they intend to have experts review the documents to "assess the services" received or not received by the twelve absent class members "in light of the Plaintiffs' claims in this matter"—is extraordinarily vague. Simply desiring an expert to assess material does not render such material relevant.

As to the City's secondary argument that the scope of documentation sought by the subpoena is too broad, this Court agrees with Magistrate Judge Carlson that "the phrase 'but not limited to' (found within the sentence: 'The documents and communications to be produced include, but are not limited to, [the eleven categories listed in the subpoena].') theoretically creates an infinite and largely undefined scope to this subpoena. Accordingly, given the otherwise detailed description of what the subpoena seeks, [this Court] would limit the subpoena to those 11 specified categories of information set forth in the subpoena itself." *S.R.*, 2020 U.S. Dist. LEXIS 29776 (Carlson, J.), at *9 n.2.

Notwithstanding the lack of relevance of the requested information to Plaintiffs' claims or Defendant DHS's defenses at trial, this Court will address the City's burden under Rule 45 in light of the information's potential or conditional relevance at future proceedings, should there be a finding of liability.

## *II. Rule 45*

The City contends that Rule 45 requires the subpoena to either be quashed or modified because it requires disclosure of both privileged and otherwise-protected matter, to which no exception or waiver applies. In response, Plaintiffs argue that none of the information sought is

---

the potential class members is not to be determined by dismembering [Defendants' conduct] and matching the pieces against [Defendants' conduct with regard] to each class member.") (emphasis added).

protected by federal privilege and, further, that the Confidentiality Order[10] approved by Judge Jones sufficiently protects the confidentiality and privacy interests of the class members.

As to whether federal privilege applies, the United States Court of Appeals for the Third Circuit ("Third Circuit") held in *Pearson v. Miller* that the confidentiality provisions in both the Juvenile Act, 42 Pa. Cons. Stat. § 6301 *et seq.*, and the Child Protective Services Law ("CPSL"), 23 Pa. Cons. Stat. § 6301 *et seq.*, do not create a federal privilege prohibiting discovery. 211 F.3d 57, 69-72 (3d Cir. 2000). The Third Circuit, however, noted that the federal psychotherapist privilege "would seem to overlap" with the state law privilege created by the Mental Health Procedures Act ("MHPA"), 50 Pa. Cons. Stat. § 7101 *et seq*. *Id*. at 70. The federal psychotherapist privilege is defined as "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment[; such communications] are protected from compelled disclosure[.]" *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). The MHPA privilege creates an "absolute confidentiality privilege covering documents related to the treatment of mental health problems[.]" *Pearson*, 211 F.3d at 70. Consistent with the reasoning in *Pearson*, this Court finds that the federal psychotherapist privilege "amount[s] to [a] parallel of the state law privilege" under the MHPA. *Id*. at 69.

The Third Circuit also noted that the MHPA's "absolute confidentiality privilege covering documents related to the treatment of mental health problems . . . is held by the *patient*, who is permitted to waive it[.]" *Id.* at 70 (emphasis added) (internal quotations omitted). Similarly, "the federal psychotherapist privilege is owned by—and fully waivable by—the patient." *Id*. (citing *Jaffee*, 518 U.S. at 15 n.14). In this case, the patients (*i.e.*, the twelve absent class members) have not waived their federal psychotherapist or MHPA privileges, nor have they had the opportunity

---

[10]   *See S.R. v. Pennsylvania Department of Human Services*, No. 17-cv-2332, ECF 40 (M.D. Pa. filed Aug. 10, 2018).

8

to do so because they have not received notice of the subpoena. Thus, under these circumstances, the subpoena must be modified to the extent that it seeks any documentation subject to the aforementioned privileges, namely, any documentation related to the treatment and/or diagnosis of the twelve absent class members' mental health problems, unless and until notice is provided to, and waivers are obtained from, each patient and/or their legal guardians.

In addition to its arguments about federal privilege, the City also argues that the subpoenaed documentation constitutes "otherwise-protected matter" under Rule 45. The parties appear to agree, as does this Court, that the documentation sought is confidential under the three aforementioned Pennsylvania statutes. In *Pearson*, the Third Circuit acknowledged "the considerable significance of the interests in confidentiality here at stake," and noted that Pennsylvania state courts hold the Juvenile Act, CPSL, and MHPA as creating evidentiary privileges at the state level.[11] *Pearson*, 211 F.3d at 62-63, 68, 73. Magistrate Judge Carlson also noted that "children and youth service records . . . are, by statute, cloaked in some measure of confidentiality." *S.R.*, 2020 U.S. Dist. LEXIS 29776 (Carlson, J.), at *8. Further, the confidentiality interests conferred by CPSL and the Juvenile Act apply not only to the twelve absent class members themselves, but also "protect[] third-party interests . . . of those who file child abuse reports, of those who work with the child, and, perhaps, of the state agencies

---

[11] For reference: CPSL "mandates that the confidentiality of reports of child abuse made pursuant to that law be preserved. It provides that such reports are to be made available only to a limited number of persons, among whom are the subject of any report and a guardian ad litem of the child"; the Juvenile Act "restricts access to files and records of the court related to proceedings under the Act, which include custody disputes, delinquency proceedings, et cetera. Such files are to be kept confidential, except that certain excepted persons, including parties and their counsel and representatives are permitted to view the documents contained therein. Even those granted access by an exception to the general confidentiality rule, however, shall not be permitted to see reports revealing the names of confidential sources of information contained in social reports, except at the discretion of the court"; and MHPA, as previously noted, "directs that all documents concerning persons in treatment [for mental illness] shall be kept confidential. Such documents may be released only by the consent of the subject, or in other limited circumstances." *Pearson*, 211 F.3d at 62-63 (internal quotations and citations omitted) (quoting the various statutes).

themselves." *Pearson*, 211 F.3d at 70.  In sum, the subpoenaed documentation constitutes otherwise-protected, confidential matter.  As such, "[f]ederal and state courts recognize the important privacy interests fostered and protected by state law, and have therefore analyzed subpoena requests by considering whether the parties have fully complied with state children and youth confidentiality laws."  *S.R.*, 2020 U.S. Dist. LEXIS 29776 (Carlson, J.), at *8 (citing *L.W. v. Lackawanna Cty.*, 2015 U.S. Dist. LEXIS 42577, at *6-9 (M.D. Pa. Apr. 1, 2015)).

These statutes "provide[] a number of exceptions to [their] confidentiality requirements[.]" *S.R.*, 2020 U.S. Dist. LEXIS 29776 (Carlson, J.), at *7; *see supra* note 7.  However, as the City points out, none of the exceptions apply here, and none of the statutes explicitly "allow for an exception to their confidentiality provisions based on a confidentiality order in a civil action." City Br. at 12.  Additionally, while the statutes generally permit the individual who is the *subject* of the documents to waive his or her confidentiality and privacy rights,[12] as noted, the twelve absent class members who are the subject of the subpoenaed documentation have not executed any such waivers.  Therefore, to ensure that Plaintiffs fully comply with the state children and youth confidentiality statutes, the subpoena must be modified to the extent that it seeks any documentation deemed confidential under the Juvenile Act, CPSL, or MHPA, unless and until waivers are obtained from the subjects of the documentation.

Lastly, the City's concerns regarding the adequacy of the Confidentiality Order to protect the twelve class absent members' interests needs to be addressed.  Plaintiffs generally claim that "the Confidentiality Order in place provides ample protection of the confidential child welfare and

---

[12] This Court notes that for the CPSL in particular, the Third Circuit has acknowledged that the confidentiality interest created by the statute is likely held by more than just the subject of the documentation, but rather also held by those "who file child abuse reports, of those who work with the child, and, perhaps, of the state agencies themselves." *Pearson*, 211 F.3d at 70.  However, for the sake of practicality, it is operatively the "primary holder of interests in confidentiality" whose waiver should be required. *Id.* at 72.

10

mental health information embodied in the requested records[.]" Plf. Br. at 10. The City disagrees and argues that: (1) the statutes do not explicitly permit, as an enumerated exception, disclosure of confidential information pursuant to a confidentiality order in a civil action; and (2) the Confidentiality Order is substantively inadequate because it (a) requires identification of the children and their guardians and (b) does not protect the identities of child welfare professionals, medical providers, or abuse reporters.

There is no dispute that the Confidentiality Order would apply to any documents the City produced pursuant to Plaintiffs' subpoena, as presented. A review of the Confidentiality Order (which includes many of the trappings of a typical protective order) reveals that it requires, *inter alia*, the names of class members and their guardians be abbreviated to their initials, but "not concealed." City Br. at 102-03. This abbreviation is only required when the confidential information is to be shown to a non-party, as opposed to when it is shared with opposing parties or among the named plaintiffs, in which case redaction of any personally identifying information or health care information is strictly forbidden (with the only exceptions being social security numbers and medical assistance numbers). *Id*. at 102-05. The Confidentiality Order also gives counsel for all parties the discretion to determine situations in which exceptions apply and "it is necessary for a non-party to view or have access to discovery or other information that includes non-redacted Confidential Information[.]" *Id*. at 103. The Confidentiality Order does not provide for any type of protection for child welfare professionals, medical providers, or abuse reporters.[13] *See*, *generally*, *id*.

---

[13] As the Third Circuit noted in *Pearson*, the confidentiality provisions in CPSL and the Juvenile Act "protect[] third-party interests . . . of those who file child abuse reports, of those who work with the child, and, perhaps, of the state agencies themselves." 211 F.3d at 70. Thus, the identities of such individuals are confidential under the statutes.

11

While the Confidentiality Order does not provide total protection for the privacy of class members, their guardians, and assisting professionals, this Court agrees with Magistrate Judge Carlson that any concerns regarding confidentiality can be "largely addressed through two means[–the Confidentiality Order and the] . . . consent of the minor who is the subject of the subpoena." *S.R.*, 2020 U.S. Dist. LEXIS 29776 (Carlson, J.), at *9-10.  Further, as Magistrate Judge Carlson highlighted, "state law, [CPSL,] 23 Pa. Cons. Stat. § 6340(b), [requires that] the subpoena is issued with the knowledge, concurrence, and consent of the minor who is the subject of the subpoena." *S.R.*, 2020 U.S. Dist. LEXIS 29776 (Carlson, J.), at *9-10.  Thus, the Confidentiality Order *becomes* adequate to protect the particular confidential interests at stake here when it is paired with the consent of (or waiver from) the subject of the records sought.[14,15]

In the motion before Magistrate Judge Carlson, it was unclear whether the identified class member whose records were at issue had received notice that his or her confidential information was subpoenaed.  Similarly, the twelve absent class members pertinent to this underlying motion "have presumably no notice of [Plaintiffs'] request, potentially no interest in the litigation, and potentially prefer their records remain subject to the protections afforded by Pennsylvania law." City Br. at 11.  These "absent class members have had no opportunity to waive their privacy interests or express a position on the litigation." *Id*. at 12.  Under these similar circumstances, this Court agrees with Magistrate Judge Carlson that "it is essential that we confirm that [the twelve absent class members have] specific notice of this subpoena and an opportunity to be heard, and

---

[14]  This pairing also addresses the City's concerns about the fact that none of the statutes explicitly "allow for an exception to their confidentiality provisions based on a confidentiality order in a civil action[,]" City Br. at 12, since the statutes generally permit the individual who is the subject of the documents to waive their confidentiality and privacy rights.

[15]  This holding of both Magistrate Judge Carlson and this Court is entirely consistent with *Pearson*, in which the then-minor individual whose records were at issue had, in fact, expressly waived his confidentiality interests. *Pearson*, 211 F.3d at 69-72.

12

will therefore prescribe that notice be provided to [the twelve class members] prior to any subpoena compliance." *S.R.*, 2020 U.S. Dist. LEXIS 29776 (Carlson, J.), at *5.

**CONCLUSION**

Consistent with the above analysis, this Court similarly modifies the underlying subpoena accordingly, and in Magistrate Judge Carlson's same language: "in order to ensure that compliance with this additional requirement of state law is reflected on the record of this case, [this Court] will direct the parties to jointly arrange for [the twelve absent class members] to receive notice of the subpoena and for [the twelve absent class members] to be afforded an opportunity to be heard in the event of any objections on [their] part[s] to the disclosure of this information. The parties should then file an appropriate notice confirming that [the twelve absent class members have each] received notice of the subpoena." *S.R.*, 2020 U.S. Dist. LEXIS 29776 (Carlson, J.), at *10. Further, if any of the twelve class members do not object to the release of their confidential information pursuant to the subpoena, then those individuals (and/or their legal guardians) shall execute waivers to that effect and the parties should certify on the record that there are no objections from those specific individuals; only then must the City comply with the subpoena, as it pertains to each individual class member.[16] If any of the twelve class members have objections or concerns, the parties shall notify Judge Jones and Magistrate Judge Carlson so that appropriate proceedings may be conducted to address any concerns.[17] An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.

---

[16]    See *S.R.*, 2020 U.S. Dist. LEXIS 29776 (Carlson, J.), at *10 (prescribing the same modification).

[17]    *Supra* n.12.